## George v. City National Bank et al.

(Decided April 23, 1935.)

CHARLES FERGUSON for appellant.

W. F. McMURRY, Jr., and MALCOLM P. WALLACE for appellees.
J. D. MOCQUOT for appellee Penn Mut. Life Ins. Co.

OPINION OF THE COURT BY JUDGE RICHARDSON—Affirming.

T. S. Vickers, a resident of McCracken county, Ky., departed this life intestate October 22, 1919. At his death he was the owner and in possession of real and personal property located in Kentucky and Illinois. He was indebted from $150,000 to $175,000. He was survived by three children, Russell V. and Owen R. Vickers and Mrs. Annie I. Decker. George E. Decker was the husband of the latter. Vickers' children, who were adults, divided among themselves his real and personal property. The land and personal property located in Kentucky were conveyed to Annie I. Decker and that in Illinois to Russell V. and Owen R. Vickers, jointly.

The City National Bank and the Mechanics' Trust & Savings Bank were by proper orders of the county court appointed and qualified as administrators of the decedent's estate. Utterback was president of the City National Bank, and Bradshaw of the Mechanics' Trust & Savings Bank. They controlled and supervised for the banks the administration of the estate of Vickers. T. M. George, the appellant, was a creditor of Vickers to the amount of $10,000. The banks, acting as administrators of the estate of Vickers, by and through Utterback and Bradshaw, in conjunction with the heirs and creditors of Vickers, originated and executed a plan of financing the estate for the payment of the debts against it. The plan was to issue five-year bonds secured by a lien on the real and personal estate owned by Vickers at the time of his death. T. M. George was notified of the time and place of the meeting of the administrators, the heirs, and creditors of Vickers, for the purpose of considering, maturing, and perfecting a plan of financing the estate and providing for the payment of the debts. He was in attendance. A number of creditors refused to participate and declined to receive bonds in lieu of the evidences of their debts. To effectuate the plan and satisfy those creditors who refused to accept bonds when issued in accordance with the plan, the estate was required to raise about $31,000 cash. It was finally agreed by the administrators, the children of Vickers, and the consenting creditors to borrow the necessary cash with which to pay the debts of those creditors who declined to accept bonds, secured by a mortgage on the estate of Vickers, which it was agreed would be signed and issued by the trustees and delivered to the consenting creditors in satisfaction of their

respective debts against it. T. M. George was present at the meeting of the administrators,. the children of Vickers, and creditors of the estate at the time this plan was formally agreed upon. He consented thereto. However, it is fair to him to say that he now claims that he did not understand that the trust deed, with an appropriate clause securing the bonds, was to be a second lien on the estate, or that it was necessary to borrow any sum with which to pay any creditors.

To raise cash with which to pay the nonconsenting creditors, on the 1st day of March, 1921, a mortgage was executed and delivered by Annie I. Decker and husband to W. M. Williamson & Co., a corporation, Memphis, Tenn., on the land in Kentucky, owned by Vickers at his death and which had been conveyed to Annie I. Decker in the division of Vickers' lands and personal property among his children, to secure the payment of $31,000. Written applications therefor were made, signed, and delivered to Williamson & Co. by Annie I. Decker and husband. It is shown that the mortgage to secure the $31,000, after it was signed, acknowledged, and recorded by Decker and wife, was mailed to counsel of Williamson & Co., Memphis, Tenn. Notes for the $31,000 which were signed by Decker and wife accompanied the mortgage and received by counsel of Williamson & Co. In his testimony he claims that on receiving the mortgage on account of its appearance, he decided to prepare another and send it to Decker and wife for execution, delivery, and recordation, which was accordingly done, and returned it to him. He deposed that a draft, less a commission, was prepared and signed by Williamson & Co. for the $31,000, but not delivered until the second mortgage was signed, acknowledged, recorded, and returned to him by Decker and wife; that between his reception of the first mortgage and the return of the second one, the interest on the amount loaned, less the commission, was $———, for which he mailed them a check, with a draft for the amount actually loaned on this note.

On the 2d day of May, 1921, Annie I. Decker and husband executed, acknowledged, and delivered a deed of trust to the City National Bank of Paducah, Ky., conveying to it and the Mechanics' Trust & Savings Bank of Paducah, as trustees for the holders of the bonds, thereafter issued and delivered to the consenting credi-

tors of the Vickers estate and accepted by the latter in satisfaction of their debts against it. Russell and Owen Vickers executed a deed of trust embracing the Illinois property for a like purpose. The deeds of trust recite the amount of the debts owing by the Vickers estate and stipulates for the issuance of bonds with the coupons attached, of the denomination of $500 and $1,000, payable to the City National Bank and the Mechanics' Trust & Savings Bank, or bearer, with interest payable semiannually. The deed of trust executed by the Deckers contains this clause:

> "This mortgage is made, subject to a mortgage on the 642 acre tract described as it is above for $10,-000.00 to Maxwell Investment Company, dated September 1st, 1919, due July 1st, 1930, bearing interest at 6% per annum and recorded in mortgage book No. 20, page 83, Livingston County Clerk's Office, and also the following other mortgages; three mortgages to S. M. Williamson and Company, Inc., totalling $31,000.00, on part of the land above described, all dated March 1st, 1931, and recorded in mortgage book ——, page ——. This present mortgage is made expressly second and subject to said last named mortgages."

It was recorded May 9, 1921. The return of the mortgage to secure the $31,000 by counsel of Williamson & Co., as stated above, and the execution and delivery of the second mortgage to secure the same sum, and its recordation, caused the record of their deed of trust to antedate the second mortgage securing the $31,000. To cause the record to show correctly the facts, the City National Bank and the Mechanics' Trust & Savings Bank, as administrators of the estate of Vickers, executed and delivered to Annie I. Decker, a quitclaim deed which was lodged for record on the 31st day of May, 1921. And for the same purpose, on June 13, 1921, Williamson & Co. executed and delivered to Annie I. Decker and husband a release of the mortgage to it of date March 1, 1921. The release contains this clause:

> "But nothing in this instrument shall be construed as acknowledging the payment of any part of the indebtedness secured by the three mortgages hereinbefore mentioned as bearing date May 14th, 1921. The sole purpose of this instrument being to make

manifest the fact that the three mortgages last hereinbefore mentioned were executed by way of a correction or substitution, of and for the three mortgages first hereinbefore mentioned, to the end that the three mortgages hereinbefore mentioned as bearing date May 14th, 1921, may be and constituting each of them respectively, a first and only mortgage lien held by S. M. Williamson and Company, Inc., upon the several tracts of land therein particularly described."

The purpose and the effect of the quitclaim deed and this release was to perfect a prior or first lien in favor of S. M. Williamson & Co. as was stipulated in the deed of trust, and as had been agreed upon by the administrators, Vickers' children and creditors at the time of formulating the plan of financing Vickers' estate and debts. The notes evidencing the $31,000 borrowed from Williamson & Co. and secured by Decker's mortgage were assigned and delivered by Williamson & Co. to the Penn Mutual Life Insurance Company.

The Deckers failing to pay the notes, the Penn Mutual Life Insurance Company, on February 23, 1929, filed an action in the Livingston circuit court against them, to recover on the notes the $31,000 and to enforce the mortgage lien to satisfy the same. The City National Bank and the Mechanics' Trust & Savings Bank were made defendants. A judgment went by default. After it was prepared it was indorsed: "Examined and agreed to. Bradshaw, McDonald and McMurry, Jr., attorneys for the City National Bank of Paducah and Mechanics' Trust and Savings Bank of Paducah." It was then entered of record and signed by the judge of the court. In obedience to its directions, the master commissioner sold the land and reported the sale to the court on February 5, 1930.

Thereafter, T. M. George filed this action charging that the above judgment was procured by fraud, that the bonds issued in accordance with the provisions and terms of the trust deeds were accepted by him and the other creditors of the Vickers estate, upon the representation and guaranty of the City National Bank and the Mechanics' Trust & Savings Bank that all of the debts of the estate were canceled and satisfied by the issuance of bonds, and all other liens held by other

creditors of the estate had been released, and that he relied upon these representations, and but for which he and the other creditors would not have accepted the bonds, surrendered their debts, or released any lien against the estate. He asserts that the lien created by the trust deed executed by the Deckers was prior and superior to their mortgage to Williamson & Co., and that the banks and the Deckers "colluded" with each other for "the purpose of committing a fraud upon and against the rights and interest of the bondholders," and that the mortgage to Williamson & Co. was executed and delivered in pursuance thereof, and that it is "subsequent, inferior and second to the deed of trust." He charges that the City National Bank and the Mechanics' Trust & Savings Bank "willfully, wantonly, negligently, fraudulently and collusively failed to answer or make defense or plead and set up the lien in favor of the bondholders or in favor of themselves for the use and benefit of the bondholders," in the action of the Penn Mutual Life Insurance Company against the Deckers and them. He alleges that at the time of the sale of the land in its action, the Penn Mutual Life Insurance Company had knowledge "of the first, prior, superior lien of the plaintiff and other bondholders"; that the Penn Mutual Life Insurance Company "fraudulently and in violation of the rights of the plaintiff and in violation of the rights of all such bond holders took judgment unto itself, represented to the court that it held a first and superior lien against the tracts of land."

He charges that the banks as trustees were without authority to execute the quitclaim deed or otherwise consent for the mortgage of Williamson & Co. to create a lien superior to that of the trust deed securing the payment of the bonds.

He asked that the judgment of foreclosure in the action of the Penn Mutual Life Insurance Company against the Deckers et al. be set aside and that the lien under the Decker trust deed be declared superior to the mortgage of Williamson & Co. He also sought to recover damages of the trustees. In his brief, he states that "since the City National Bank has failed, this phase of the case is of minor import and practically worthless and we shall not trouble this court with any

extensive contention as to the right of recovery on that phase, based on the failure of the trustees to do and perform their duties as such.''

Without reproducing the evidence, a careful, painstaking review and consideration of it convinces us beyond cavil, question, or doubt, that George utterly fails to establish fraud, collusion, misrepresentation, or any ground of recovery. He argues that the indorsement of counsel showing their approval of the form of the judgment entered in the action of the Penn Mutual Life Insurance Company against the Deckers is sufficient evidence of fraud. We cannot accept this view. As to the want of authority upon the part of the trustees to execute and deliver the quitclaim deed, even if it be conceded it is invalid for any reason, according to the principles of intrinsic equity, on the facts adduced, the lien existing by virtue of Williamson & Co.'s first mortgage was prior and superior to that created by, and existing under, the trust deed, though neither the second mortgage, the quitclaim deed, nor the release had been executed. The primary reason therefor is the trust deed expressly so provides. The second recorded mortgage of Williamson & Co. was merely a continuation and evidence of the lien created by the first one, which the trust deed of the Deckers recognized, and expressly agreed should be superior to the lien created by the trust deed. To escape the provision of the Decker trust deed, George endeavors to establish that he did not understand or know that a mortgage was to be executed and delivered to secure a cash loan to effect and carry out the plan of refinancing Vickers' estate. It is satisfactorily established that it was agreed at the time the plan of refinancing the decedent's debt was determined by the administrators, the Vickers children, and the assembled creditors, that a mortgage was to be executed and delivered, creating a lien superior to the lien of the trust deeds in order to borrow a sufficient sum with which to satisfy the nonconsenting creditors. Later, he accepted bonds in satisfaction of his $10,000 debt, and at that time the trust deed of the Deckers expressly recognized the existence and priority of the mortgage of Williamson & Co.

The quitclaim deed, the release of the first mortgage of Williamson & Co., its second mortgage and the

deed of trust, the draft evidencing the payment of the $31,000, the books of the banks showing the receipts and disbursements thereof to the creditors of Vickers' estate, and the clause hereinbefore quoted from the Deckers' deed of trust showing that the lien thereby created is subject to that of the mortgage of Williamson & Co., corroborate the verbal testimony of the witnesses which together fairly and fully exonerate the administrators, the children of Vickers, and the Penn Mutual Life Insurance Company of every suspicion of fraud, collusion, and false representation, upon which George relies and endeavored to establish as the basis of his recovery. The provision of the deed of trust is absolutely against him. He asserts his right to a lien thereunder. No reformation was sought by proper averments and the evidence does not warrant such. Glenn v. Hollingsworth, 206 Ky. 392, 267 S. W. 216. It is our view there is an utter failure of proof authorizing a recovery herein; therefore, we do not deem it necessary or essential to discuss other questions debated in the briefs.

The judgment is affirmed.